ORIGINAL

FILED
AUG 5 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TMS ENVIROCON, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 08-559 C

## COMPLAINT

Plaintiff TMS ENVIROCON, Inc. (TMS), by counsel, for its Complaint against Defendant United States of America (United States) alleges as follows:

1. Jurisdiction in this action lies pursuant to 41 U.S.C. §§ 601, *et seq.*, 28 U.S.C. § 1491 and/or 28 U.S.C. § 2201.

2. TMS is a Virginia corporation with its principal office located in Norfolk, VA.

3. The United States, through the Department of the Air Force (Air Force), issued Contract No. F44600-01-C-0029 (Contract), entitled Repair Non-Compliant Water Mains at Langley AFB, VA (Project) to TMS.

4. The Contract was a HUBZone set-aside, and at the time TMS was a HUBZone and 8(a) certified small business.

5. During Contract performance, TMS encountered various changed and differing conditions that adversely impacted the Contract work, both in terms of the cost and time of performance.

6. The Air Force has partially compensated TMS for certain of those impacts, but not others.

7. Additionally, TMS' subcontractor, Shaw Environmental, Inc. (Shaw) claims it was also impacted during the performance of its subcontract work, and that of Shaw's predecessor, IT Corporation (IT).

8. Shaw submitted a "Request for Equitable Adjustment" for alleged adjustments due for Air Force acts and omissions that Shaw alleged increased its subcontract's cost and performance period (Shaw REA).

9. The Shaw REA was submitted to TMS as a "pass-through" request for equitable adjustment pursuant to DFAR 252.243-7002, and included Shaw's certification for this as a request for equitable adjustment.

10. As requested by Shaw, TMS submit the Shaw REA to the Air Force for the Air Force's review, comment and negotiation by TMS letter dated September 9, 2004.

11. The Air Force acknowledged receipt of the Shaw REA by letter dated September 21, 2004, and advised of anticipated response in November 2004 because of other year end pressures and urgencies.

12. The Air Force updated TMS on the status of the Shaw REA review by letter dated December 16, 2004 and projected a revised response date of about mid-January 2005.

13. Thereafter, in February 2005, the Air Force advised TMS that it required a certification of the Shaw REA by TMS before the Air Force would consider the Shaw REA's merits.

14. As requested by the Air Force, TMS subsequently furnished certification of the Shaw REA pursuant to DFAR 252.243-7002 with its correspondence dated March 14, 2005.

15. The Contracting Officer thereafter unilaterally issued a "denial" of the Shaw REA as a purported Contract Disputes Act (CDA) "final decision" by her written memorandum to TMS dated November 15, 2005, noting TMS' applicable appeal rights, including to this Court.

16. A CDA final decision had not been requested, but given this unilateral action and declaration, to protect its rights and those of Shaw, TMS filed a protective appeal with this Court on November 13, 2006, which was designated Case No. 06-772C (Protective Appeal).

17. Following its consideration of the applicable sequence, by order entered May 1, 2007 this Court dismissed the Protective Appeal without prejudice for lack of subject matter jurisdiction, and it was contemplated that a new claim would be submitted to the contracting officer as noted in Judge Baskir's Order of Dismissal, copy attached hereto as Exhibit 1.

18. Such new claim has not yet been submitted, among other reasons, because of an unresolved issue arising from TMS' inadvertent submission of the Contractor's Release Form attached hereto as Exhibit 2, submitted to obtain the then nominal, but undisputedly due, $4,309.87 Contract balance.

19. That Contract balance was acknowledged due to TMS by the Air Force without offset or claim. Of that amount paid by the Air Force, the base contract balance amount was $4,262.73, and the remainder paid was the interest due for this acknowledged, overdue debt.

20. This release was inadvertently submitted by TMS' comptroller, Ms. Anne S. Ray, at the request of the Air Force, not knowing that by submitting the release she might be waiving the unresolved requests for adjustment / potential claims of TMS or Shaw.

21. Ms. Ray had been contacted by an Air Force representative that informed her that the Air Force was trying to "clean-up" their accounts payable, and therefore requested her submission of the final payment application.

22. Ms. Ray was unsophisticated regarding such matters and unaware of the release's significance, and she merely understood she was applying for the payment of the monies that the Air Force acknowledged past due.

23. By submitting for the final payment, Ms. Ray was unaware, and did not understand or intend, that she would impact the Shaw REA or any other requests for contract adjustments, and was simply responding to the customer's (the Air Force's) request.

24. Ms. Ray was not authorized by TMS to waive pending proposals or claims against the Air Force, and as noted above did not understand or intend to do so by submitting for payment of the past due balance acknowledged to be due to TMS by the Air Force.

25. The Air Force appears to have known of this lack of such intention since it did not thereafter initially process the final payment. Indeed, no action was taken by the Air Force regarding the inadvertent request for final payment for over three months, during which time period the Protective Appeal was filed and remained pending.

26. During this period after the filing of the Pending Action, the case was designated and assigned, appearance was made by Justice Department counsel, the Court's special procedures order was entered and motion was made and granted for an enlargement of 30 days for the United States' answer.

27. At no time during this pending period did the United States raise, make inquiry regarding or otherwise discuss with TMS or its counsel the final release or related matters, and it was not until the United States made final payment on January 10, 2007 that TMS' inadvertent application for final payment was raised as a potential claim bar.

28. The Air Force's final payment was confirmed to TMS by Defense Finance and Accounting Service (DFAS) email at 12:14 p.m. Ten minutes later, Justice Department counsel

assigned to the Protective Appeal action emailed TMS counsel informing him of the release and payment, and suggesting required dismissal of the Protective Appeal on that basis.

29. Had the inadvertently submitted request for final payment and accompanying release, which was not effective until the final payment, been raised prior to this, TMS could, and would, have withdrawn the same, but was not given this chance before the final payment was made and confirmation sent as noted above.

30. Despite this, it is clear that, at the time the Air Force made the final payment the Air Force was, unquestionably, aware of TMS' intention to pursue the pass-through on Shaw's behalf; of TMS' intention to pursue Contract adjustments of its own; and of TMS having filed and to be actively prosecuting the Protective Appeal.

31. TMS subsequently sought to retract the release, and tendered its check in the amount of $500.00 back to the Air Force to insure (despite those monies also being agreed due to TMS without offset) that the Contract could be "left open" without further question for purposes of negotiating further Contract adjustments, including those contemplated by Judge Baskir's Order of Dismissal (Exhibit 1 as referenced above). TMS' August 2, 2007 letter doing so is attached as Exhibit 3.

32. TMS had not sought retraction earlier since associated matters were being litigated as part of the Protective Appeal. The Air Force had raised the project releases as defenses in bar, the effective of which TMS had denied. Related matters were discussed during the Protective Appeal, including in the Joint Preliminary Status Report and during the Early Neutral Evaluation, but it was regardless anticipated, as noted in Judge Baskir's Order of Dismissal (Exhibit 1), that TMS could, regardless, submit a new claim that the Air Force would evaluate and process.

33. However, the Air Force refused to accept the tendered check, and by letter dated August 6, 2007 the Contracting Officer informed TMS of the Air Force's position that TMS could not retract the final release. Copy of this letter is attached as Exhibit 4.

34. As noted in this letter, this was a re-submission of an earlier payment application, which further demonstrates the lack of intent to effect a final release. That earlier submission was dated November 22, 2005 but not accepted or paid upon by the Air Force.

35. Indeed, the Air Force did not seek to effect a final release by making final payment until three months after the October 2006 payment application was submitted and almost two months after TMS had already filed and was prosecuting the Protective Appeal.

36. These and other facts as may be discoverable herein demonstrate / are expected to further demonstrate that neither the final release nor the Air Force's final payment were effective (either legally or equitably) so as to preclude TMS' claim rights against the Air Force (or alternatively demonstrate that the Air Force should be estoped or otherwise equitably or legally barred from claiming such preclusive effect), including with respect to the Shaw REA, including without limitation for the following reasons:

a. TMS' request for final payment and TMS' submission of the final release were inadvertent and/or obvious mistakes or oversights.

b. Since the monies were already due and owing to TMS, without offset or claim against them, there was no legal consideration for the final release.

c. The Air Force breached its obligations of good faith and fair dealing owed to TMS respecting the underlying Contract, the final release and final payment, including by acting in bad faith to make the final payment while knowing claims were pending, and outstanding, including litigation filed, and similar related acts and omissions.

d. There was a course of dealing between the Air Force and TMS on this Project that claims would be negotiated notwithstanding such purported releases of claims, including as recognized by the Contracting Officer in her email of December 22, 2003 as regards the execution but thereafter planned negotiation of P00011.

e. The release form TMS was required to utilize made no provision for the inclusion of release exceptions, which if it had would have alerted Ms. Ray the need to reflect the outstanding claims.

f. The Air Force was on actual notice (or alternatively at the least should have known based upon the totality of facts and circumstances) of the outstanding claims and that, therefore, the final release was not intended to extinguish the outstanding claims.

g. Ms. Ray lacked authority to effect a final release of the outstanding claims, and had no such intention as noted above.

h. The Air Force knew or should have known that if contacted regarding the intention respecting the final release and application for final payment that TMS would have confirmed no such intention to release claims, yet failed to so contact TMS or counsel of record for TMS, thereby depriving TMS of the opportunity to rescind the final release prior to final payment and clarify related intentions.

i. The Air Force's acts and omissions mislead TMS into applying for, and then not withdrawing, the request for final payment, and otherwise equitably estop the Air Force from relying upon the final release or final payment to preclude the claims process for the outstanding project claims, including the Shaw REA.

j. Under the totality of the facts and circumstances, neither the final release nor the Air Force's making of final payment legally or equitably preclude the Contract

adjustments of TMS or Shaw, including those relating to the Shaw REA, or alternatively the totality of the facts and circumstances legally or equitably preclude the Air Force from asserting or relying upon such preclusion effect or bar.

37. As noted above, there is an actual controversy between TMS and the United States regarding these matters, including: 1) TMS' ability to retract the final release; and 2) the legal effect of the final release.

38. It is therefore appropriate, and TMS accordingly moves, that the Court declare the parties' respective rights relating to the final release, including the legal affect, if any, of the final release and/or final payment.

39. To the extent the Air Force's August 6, 2007 letter, received by TMS on August 8, 2007 is a final decision for Contract Disputes Act purposes, TMS further hereby timely appeals such final decision; this action being filed within one year of the same.

WHEREFORE, TMS, by counsel, prays that the Court declare the parties' respective rights as relates to the final payment and release; declare the Air Force's obligation to negotiate, and as appropriate make, Contract adjustments with TMS; declare TMS' rights to utilize the Contract disputes processes to process outstanding Project claims, including with respect to the Shaw REA and/or other Contract adjustments; and award TMS all such other and further relief as the Court deems proper, equitable, appropriate and/or otherwise allowed with respect to this cause.

Done this date: August 4, 2008

TMS ENVIROCON, INC.

By: ______________________
Of Counsel

Neil S. Lowenstein
Vandeventer Black LLP
101 W. Main St., Suite 500
500 World Trade Center
Norfolk, VA 23510
(757) 446-8610
(757) 446-8670 (facsimile)
Email: nlowenstein@vanblk.com

 Exhibit 1

# In the United States Court of Federal Claims

Case No. 06-772C
(Filed: May 1, 2007)

| | |
|---|---|
| TMS ENVIROCON, INC., *Plaintiff,* | * |
| v. | * |
| THE UNITED STATES OF AMERICA, *Defendant.* | * |

## ORDER OF DISMISSAL

Based on the parties' request at the ADR Conference held on April 24, 2007, and Judge Christine O.C. Miller's Order of April 25, **this case is hereby dismissed without prejudice for lack of subject matter jurisdiction.** No costs.

Plaintiff intends to submit a new claim to the contracting officer. Plaintiff intends to file an action in the U.S. Court of Federal Claims if the matter is not resolved at the agency level. If a new action is filed, filing fees shall be waived, and the complaint shall be assigned to the presiding judge. Defendant represents that it will endeavor to answer any new complaint within 30 days.

Accordingly, the telephonic Preliminary Status Conference scheduled on May 8, 2007, is cancelled.

**IT IS SO ORDERED.**

/s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge

Exhibit 2

RCVD 3 OCT 06
1 CONS/LGCC
jadji

CONTRACTOR'S RELEASE
FORM

CONTRACTOR'S RELEASE UNDER CONTRACT F44600-01-C-0029

KNOW ALL MEN BY THESE PRESENTS: In consideration of the premise and the sum of four million two hundred sixty-two thousand nine hundred thirty-eight and 33/100 dollars------------ $4,262,938.33

lawful money of the United States of America (hereinafter called the "Government") four million two hundred fifty-eight thousand six hundred seventy-five and 60/100 dollars------------ ( $4,258,675.60 )

of which has already been paid and four thousand two hundred sixty-two and 73/100 dollars------------ $4,262.73 ) of which is to be paid

by the Government under the above-mentioned contract, the undersigned Contractor does, and by the receipt of said sum shall for itself, its successors and assigns, remise, release and forever discharge the Government, its officers, agents, and employees, of and from all liabilities, obligations and claims whatsoever in law and in equity under or arising out of said contract.

1ST CONTRACTING SQUADRON
2006 OCT 3 PM 2:07

IN WITNESS WHEREOF, this release has been executed this 3rd day of Oct-06

WITNESS:

(Contractor)

BY: Anne S. Ray

TITLE: Controller

**IN CASE OF CORPORATION WITNESSES NOT REQUIRED, BUT CERTIFICATE BELOW MUST BE COMPLETED.**

**CERTIFICATE**

Terry Penn, certify that I am the Business Dev. Manager of the corporation in the foregoing release; that Anne S. Ray who signed said release on behalf of the Contractor was then Controller of said corporation; that said release was duly signed for and in behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

(corporate Seal)

Terry Penn, Business Development Manager

CMH 11/19/01

Exhibit 3

# TMS ENVIROCON, Inc.

**Environmental and Construction Services**

August 2, 2007

**VIA CERTIFIED MAIL**
**7007 0220 0001 7858 7536**

1CONS/LGCA
Attention: Contracting Officer (Contract No. F44600-01-C-0029)
74 Nealy Avenue
Langley AFB, VA 23665-2088

RE: **MUHJ 01-0885- Langley Air Force Base Non-Complaint Water Mains; F44600-01-C-0029; Retraction of Contractor's Release**

Ladies and Gentlemen:

This letter serves as TMS ENVIROCON, Inc.'s (TMS) retraction of the Contractor's Release form previously submitted, inadvertently, to you. At the time this was submitted, our Controller understood she was merely submitting for the outstanding balance due, respecting which there was no dispute; however, she did not intend to release the pending adjustments or potential related claims arising under the contract. Indeed, Ms. Ray was not authorized to so release the Government.

We believe the Government had to be aware of this under the facts and circumstances. Foremost, the Government was aware at the time this document was inadvertently submitted by Ms. Ray that TMS had pending a request for equitable adjustment on behalf of its subcontractor, Shaw Environmental, Inc. ("Shaw"), and had also reserved associated adjustment rights for itself respecting the project. Moreover, as the Government was also aware when it made the mistaken payment, TMS's Complaint was pending before the United States Court of Federal Claims respecting the pass through.

Given these, we believe you will agree that both the application for final payment by TMS, and the Government's payment of the same, were obvious inadvertent mistakes or oversights that, in hindsight, should not have been made or allowed by either side. Therefore, we hereby retract the release and request you take the appropriate contract actions respecting the same.

With respect to the above, we are enclosing herewith our check made payable to the United States of America in the sum of $500.00. The purpose of this is to leave that amount as the outstanding balance for the project until all adjustments are finally made or adjudicated, if necessary (which TMS hopes, though, will not be the case). The entire balance is not being returned as it was due when paid.

We trust the foregoing is agreeable and acceptable; however, should you need anything further or otherwise wish to discuss, please do not hesitate to contact me.

Sincerely,

TMS ENVIROCON, INC.

Mehul S. Shah

Mehul Shah
President

TMS ENVIROCON, INC.

Exhibit 09951

UNITED STATES TREASURER

Check Number: 9951
Check Date: Jul 31, 2007

Check Amount: $500.00

| Invoice | Date | Discount Taken | Amount Paid | Quantity | Description |
|---|---|---|---|---|---|
| | 7/31/07 | | 500.00 | 1.00 | REFUND OF MONIES PAID ON 2025 |

---

**TMS ENVIROCON, INC.**
1108 TIDEWATER DR.
NORFOLK, VA 23504
(757) 965-8491

**TOWNE BANK**
PORTSMOUTH, VA 23701

68-894/514

09951

DATE

Jul 31, 2007

AMOUNT

$ 500.00

Memo:

PAY TO THE ORDER OF: Five Hundred and 00/100 Dollars

UNITED STATES TREASURER

AUTHORIZED SIGNATURE

⑈009951⑈ ⑆051408949⑆0212029819⑈

Exhibit 4

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 1st FIGHTER WING**
**LANGLEY AIR FORCE BASE VA**

AUG 08 2007

6 August 2007

MEMORANDUM FOR: TMS Environ Inc.
1108 Tidewater Drive
Norfolk, VA 23504

FROM: 1 CONS/LGCC
74 Nealy Avenue
Langley AFB, VA 23665-2088

SUBJECT: Contract Number: FA4800-01-C-0029, Title: Repair Non-Compliant Water Mains at Langley AFB, VA/Release of Claims

1. The purpose of this letter is to return your check number 09951 in the $500.00 back to your company unaccepted. As you are well aware, your firm cannot retract its final release of claims against the subject contract. For the record, your company submitted a final release of claims twice. First time the release of claims was signed by Mr. Terry Penn on 22 November 2005. The second time the release of claims was signed by Mr. Terry Penn on 3 October 2006. Furthermore, the Government rendered final payment in the amount of $4,262.73 to your company; more than seven (7) months ago.

2. If you have any questions or comments, don't hesitate to contact either Mr. James Doswell at (757) 225-2571 or the undersigned at (757) 764-2597.

MICHAEL J. COSTLOW
Contracting Officer

Attachment:
1. Check Number 09951

*Golden Legacy, Boundless Future... Your Nation's Air Force*